IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHAEL KROUGH | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CALPINE, et al. | : | NO. 18-15733 |

MEMORANDUM

Bartle, J.                                                    September 29, 2020

Plaintiff Michael Krough ("Krough") brings this action against defendants Calpine Corporation, Calpine New Jersey Generation, LLC, and Calpine Operating Services Company, Inc. (collectively, "Calpine") alleging personal injuries as a result of Calpine's negligence during the demolition of a powerplant Calpine owned. Calpine subsequently filed a third-party complaint against Brandenburg Industrial Service Company ("Brandenburg"), an independent contractor it had hired to perform the demolition and associated work. Calpine avers in the third-party complaint that Brandenburg is liable to it in the event it is found negligent. Krough, a laborer employed by Brandenburg at the site of the demolition, asserts that Calpine failed to provide him with a safe workplace. Before the court is the motion of Calpine for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). We view the facts and draw all inferences in favor of the nonmoving party. See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant. See Anderson, 477 U.S. at 252. "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." Id.

II

The following facts are undisputed. Calpine was the owner of a powerplant known as Deepwater Energy Center, located in Pennsville, New Jersey. On or about May 16, 2016, Calpine and Brandenburg entered into a Demolition Services Agreement

("Agreement"), pursuant to which Brandenburg agreed to demolish the powerplant and perform related work.  Brandenburg hired laborers, one of whom was plaintiff Krough.

As part of the Agreement, Brandenburg was required to "coordinate its various activities at the Site in such a way that maximizes safety" and "establish, maintain, and enforce safe work practices."  Pursuant to the Agreement, Calpine was to "make available a supervisor or other representative at the site during normal business hours while work is being performed to provide direction and answer contractor's questions regarding the work."  During the demolition, Calpine and Brandenburg participated in weekly coordination meetings, discussing various safety and work-related items.  On some occasions, the plant engineer from Calpine and other Calpine employees would directly address unsafe work conditions and safety issues with laborers who were Brandenburg employees.  Brandenburg produced Daily Project Reports listing:  work performed, safety meeting topics, potential hazards, and hazard controls.  The entrance to the demolition site was controlled by a third-party security company engaged by Calpine.

On or about November 7, 2016, Krough and another laborer, James Freeman, were working in the basement of the demolition site.  Freeman was operating a piece of machinery known as a skid steer, pulling and maneuvering copper wire.

-3-

Krough was serving as a spotter to communicate to Freeman if the copper wire got caught on any obstructions.  It was also Krough's job to "get [the wire] hooked up to the bobcat so that they could be pulled out of the basement, put outside, chopped up and put on trucks."  Some of the copper wire eventually got caught on a bollard or pillar.  While Krough was attempting to untangle the wire, his hand became stuck between the wires and the pillar, leading to his injuries.  As a result of the accident, Krough filed a worker's compensation claim against his employer, Brandenburg, and this negligence action against the property owner, Calpine.

The Daily Project Reports demonstrate that Krough received safety training from Brandenburg on the proper personal protective equipment ("PPE") and the use of cut resistant gloves on at least four occasions, including on the date of the injury. The minimum PPE requirement for general demolition projects include cut-resistant work gloves.  Krough had on leather gloves that were not cut-resistant at the time of the incident.  The Agreement also specified that work areas "shall be well lit prior to work being performed" and that active work areas "may also be outfitted with temporary light stands and light

-4-

strings."  During the time of the accident, there were light
strings hanging in the basement.[1]

III

To survive a motion for summary judgment, a plaintiff
must present sufficient evidence to establish a prima facie case
of negligence.  "To establish a prima facie case of negligence,
a plaintiff must establish the following elements:  (1) duty of
care, (2) breach of that duty, (3) proximate cause, and (4)
damages."  D'Alessandro v. Hartzel, 29 A.3d 1112, 1114
(App. Div. 2011) (internal citations omitted).

Calpine argues that the first element cannot be met
because it owed no duty to Krough.  Calpine maintains that
Krough was an employee of an independent contractor who was
"injured by a known hazard that was part of or incidental to the
very work the contractor was hired to perform."  Krough concedes
this point and states, that it "is well settled law in New
Jersey, [] that one who hires independent contractors is not
liable for the wrongful conduct of those contractors in the
performance of their duties and services."  See Baldasarre v.
Butler, 625 A.2d 458, 465 (1993).  However, Krough asserts that

---

[1]    The parties discuss at length the reliability of Krough's
expert's opinion regarding the lighting in the basement of the
demolition site at the time of the incident.  This issue need
not be further analyzed because the reliability and/or
admissibility of Krough's expert's opinion is not material to
Calpine's summary judgment motion.

-5-

there "are three exceptions to the rule that a principal /
contractee is not liable for the wrongful conduct of its
independent contractors."  Those exceptions exist when:  (1) the
principal retains control over the manner and means of doing the
work the contractor provided; (2) the principal has engaged an
incompetent contractor; or (3) the services provided by the
contractor are a nuisance per se (i.e., "inherently dangerous").
See Majestic Realty Associates, Inc. v. Toti Contracting Co.,
153 A.2d 321 (1959).

          First, Krough argues that at minimum, when taken in
light most favorable to the non-moving party, there are genuine
issues of material fact as to whether Calpine retained "control
over the manner and means of the work" that Brandenburg and its
employees performed.  As supporting evidence, he points to the
following facts:  (1) Calpine employees were present on the site
throughout the demolition; (2) Calpine had the ability to
address safety situations with Brandenburg directly and request
remedies be addressed; (3) Calpine would hold meetings with
Brandenburg employees to address safety concerns; (4) Calpine on
some occasions would address Brandenburg employees directly when
they observed unsafe practices; and (5) Calpine controlled
access to the job site via a security gate.  Calpine counters
that these activities do not constitute "control of the means

and methods of the work," but rather show general supervisory conduct.

To impose liability under the "control of the means and methods of the work" exception, the landowner must provide "direction of the manner in which the delegated tasks are carried out." See Wolczak v. National Electric Products Corp., 168 A.2d 412, 415 (App. Div. 1961).  The New Jersey Supreme Court has stated that:

> Developing a project and directing that it be completed within a certain timeframe and within certain specifications do not constitute interference with the project and remain within the "general supervisory power over the result to be accomplished rather than the means of that accomplishment."

> Muhammad v. New Jersey Transit, 821 A.2d 1148, 1155

(2003) (quoting Mavrikidis v. Petullo, 707 A.2d 977 (1998)). The New Jersey Supreme Court further explained that:

> Absent control over the job location or direction of the manner in which the delegated tasks are carried out, the party contracting out the work, be it a landowner or a general contractor, is not liable for injuries to employees of the contractor resulting from either the condition to the premises or the manner in which the work is performed. Further, this immunity is not disturbed by the exercise of merely such general superintendence as is necessary to insure that the contractor performs his agreement.

Id. at 1156 (internal quotations and citations omitted).

Indeed, there must be "a sufficient degree of detailed

superintendence over the . . . employees [so] as to invoke a legal relationship analogous to that of master-servant." Wolczak, 168 A.2d at 415.

Reviewing the undisputed facts in the light most favorable to plaintiff, no reasonable jury could find that Calpine had the requisite "control of the means and methods of the work" to meet the first exception to the general rule that a principal is not liable for the wrongful conduct of its independent contractors. Calpine's involvement in the demolition project and related activities during the work were merely supervisory. The Agreement it had with Brandenburg allowed it to have representatives present to ensure that the work was being done as agreed. The undisputed facts show that Calpine did not have any control of the means and methods over the demolition being performed, the equipment being used, or workers being hired by Brandenburg.

With respect to the second exception, Krough concedes that it cannot prove that Calpine hired an incompetent contactor to perform the demolition of the powerplant. New Jersey case law is clear that:

> no presumption as to the negligence of an
> employer in hiring an independent contractor
> arises from the fact that, after being
> hired, the contractor is negligent in the
> performance of his duties and injures the
> person or property of another.

-8-

Mavrikidis, 707 A.2d at 986.  There are simply no facts in the record which would allow Krough to prevail under this exception allowing for landowner liability.

Finally, Krough argues that the third exception to the general rule against liability of a landowner is met because the "work Calpine contracted to be performed was inherently dangerous."  He asserts that a demolition, "by definition . . . is always considered inherently dangerous."  According to Krough, since Calpine conducted daily safety meetings with Brandenburg and was present on the premises, it was aware that the work being performed was dangerous.  Calpine counters that a demolition is not inherently dangerous, and even if it were, Krough was not engaged in demolition at the time of the accident.

An "inherently dangerous activity" is always dangerous, no matter how performed, and the danger is incidental to and characteristic of the work itself.  Rodrigues v. Elizabethtown Gas Co., 250 A.2d 408, 413 (App. Div. 1969).  The Restatement (Second) of Torts addresses demolitions and states, in relevant part:

> Demolishing buildings, tearing down walls,
> excavations, etc. An independent contractor
> is often employed to do a piece of work
> which, as it progresses, is likely to
> involve the creation of a dangerous
> condition unless special precautions are
> taken to prevent the dangerous condition

-9-

> from existing, or to make it harmless after
> it is created.

§ 413, Comment (c).  In <u>Rodrigues</u>, the court also stated that:

> the mere fact that an injured employee of an
> independent contractor was engaged in an
> activity that presented peculiar, intrinsic
> hazards, so that the activity could
> rationally be denoted "inherently
> dangerous," does not without more yield him
> a cause of action against the contractor or
> landowner.  Plaintiff's injuries must also
> have resulted from the very dangers that
> were inherent in the activity and that are
> the underlying reasons for that activity
> being defined as inherently dangerous.

250 A.2d at 413.

Here, Krough was a spotter for his co-worker who was operating heavy machinery.  He was not involved in any inherently dangerous aspect of the demolition of the powerplant when he was injured.  His job included keeping eye contact with his co-worker and informing him of any potential obstructions during the "skid-steer" process.  Relatedly, he was also responsible for collecting and disposing of the wires.  Such work is not "always dangerous no matter how it is performed." Spotting and removing wires can be done without inherent risks and with appropriate precautions.  Accordingly, there are no facts which support the third exception to the general rule and allow for liability of Calpine because of the inherent danger of the work Krough was performing at the time of his injuries.

The motion of the defendants for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will be granted.